Estate of Edwin A. Watrous, Deceased.

Argued October 10, 1928.

Before

PORTER, P. J., HENDERSON, TREXLER, KELLER, LINN, GAWTHROP and CUNNINGHAM, JJ.

*William E. Caveny,* for appellant.—A decree in divorce of a foreign state granting alimony in monthly installments during the life of the wife is enforcible in Pennsylvania against the estate of the husband for

installments falling due after his death: Sistare v. Sistare, 218 U. S. 1; Beard v. Beard, 57 Nebraska 754; Storey v. Storey, 125 Ill. 608; Isaacs v. Isaacs, 117 Va. 728; Smythe v. Banks, 73 Ga. 303.

*John Stokes Adams,* for appellee.—A claim for alimony alleged to have fallen due after the death of the husband under a divorce decree of a foreign court cannot be maintained against his estate: Knapp v. Knapp, 134 Mass. 353; Lennahan v. O'Keefe, 107 Ill. 620; Lally v. Lally, 152 Wis. 56; McGechie v. McGechie, 43 Nebraska 523; Moorehead's Estate, 289 Pa. 542; Audobon v. Shufeldt, 181 U. S. 575.

OPINION BY LINN, J., December 13, 1928:

Edward Watrous, domiciled in Pennsylvania, died testate, July 8, 1926, leaving a widow to whom letters testamentary were granted. At the audit of her account as executrix, May 5, 1927, a claim for alimony was presented by a former wife who had obtained an absolute divorce from Watrous in 1906 in the District Court of Douglas County, Nebraska, for desertion in a suit in which he had appeared and answered. She claimed 10 installments of alimony at the rate of $110 per month for the 10 months after his death beginning August 1, 1926 to May, 1927, inclusive, with interest, on an authenticated copy of the decree to be found in the reporter's statement of the case. She also asked to have a fund set aside to secure the payment of future installments. The court below held that the right to alimony ceased with the death of Watrous and dismissed the claim.

The divorce decree provided: "It is further ordered and adjudged that the defendant pay to the plaintiff in lieu of her dower interest and right in any property he has, or may have, the sum of $110 per month as alimony as long as she lives, or until she remarries."

That decree is entitled to full faith and credit as re-

quired by Article IV, section 1, of the Constitution:
".......where a decree is rendered for alimony and
is made payable in future installments, the right to
such installments becomes absolute and vested upon
becoming due, and is therefore protected by the full
faith and credit clause, provided no modification of
the decree has been made prior to the maturity of the
installments, since, as declared in the Barber case
[21 How. 582] 'alimony decreed to a wife in a divorce
for separation from bed and board is as much a debt
of record, until the decree has been recalled, as any
other judgment for money is'." Sistare v. Sistare,
218 U. S. 1, 17.

No evidence was offered defining the effect given to
such decree in Nebraska after the death of a defend-
ant not in default. In the brief for the appellee, it
is suggested that the order was not authorized by the
law of Nebraska and McGechie v. McGechie, 43 Neb.
523 is cited; it is true that the court in that case said:
"Alimony should not be awarded a wife in install-
ments during her life. We do not approve of alimony
in the form of annuity or requiring the husband to
pay a fixed sum each month during the life of the
other party, or for an indefinite period of time."
Without referring to what was said in Hays v. Hays,
75 Neb. 731, in limitation of the dictum quoted from
the McGechie case, it is sufficient for us that the de-
cree was not appealed from; as the jurisdiction of the
court over the subject matter and over the defendant
appears, we must accept the decree as it stood when
certified: Laing v. Rigney, 160 U. S. 531, 542.

"By the Constitution and the Act of Congress, re-
quiring the faith and credit to be given to a judg-
ment of the court of another state that it has in the
state where it was rendered, it was long ago declared
by this court: 'The judgment is made a debt of
record, not examinable upon its merits; but it does
not carry with it, into another state, the efficacy of a

judgment upon property or persons, to be enforced by execution. To give it the force of a judgment in another state, it must be made a judgment there; and can only be executed in the latter as its laws may permit.' McElmoyle v. Cohen, 13 Pet. 312, 325; Thompson v. Whitman, 18 Wall. 457, 463; Wisconsin v. Pelican Ins. Co., 127 U. S. 265, 292;'' Lynde v. Lynde, 181 U. S. 183, 186.

Section 3169, Com. Stat. Neb. (1903) provides: ''All judgments and orders for payment of alimony ...... shall be liens upon property in like manner as in other actions, and may in the same manner be enforced and collected by execution and proceedings in aid thereof, or other action or process as other judgments.'' See also Nygren v. Nygren, 42 Neb. 408.

Our question then, is—treating the decree as prima facie evidence of defendant's liability for alimony, (it is not contended that it was obtained by fraud, or that the court lacked jurisdiction) does it impose liability on the husband's estate for monthly installments accruing after his death? Alimony is support money; the foundation for an award of alimony is the husband's obligation to support his wife, a duty that ends with his death.

Section 3188, Comp. Stat. Nebraska (1903) provides: ''Upon every divorce from the bonds of matrimony for any cause excepting that of adultery committed by the wife, and also upon every divorce from bed and board for any cause, if the estate and effects restored or awarded to the wife shall be insufficient for the suitable support and maintenance of herself and such children of the marriage as shall be committed to her care and custody, the court may further decree to her such part of the personal estate of the husband and such alimony out of his estate as it shall deem just and reasonable, having regard to the ability of the husband, the character and situation of the parties and all other circumstances of the case.'' That

statute would seem to authorize an award payable only during his lifetime and not to authorize a charge on a husband's property after his death for sums thereafter accruing. There is, however, a statute which does authorize such a charge, though not when the cause of divorce is desertion, as here. In Tatro v. Tatro, 18 Neb. 395, 25 N. W. 571 (1885) a decree for alimony was considered under section 3189 (not applicable in desertion cases) providing that "the wife shall be entitled to her dower in his land in the same manner as if he were dead ......" The court awarded alimony at the rate of $2,000 a year payable by installments, and the wife appealed, contending that she was "entitled to dower in the estate of the defendant;" the husband died before the case was heard, but an appeal was prosecuted on behalf of his estate. The questions considered, and their bearing on the point raised by the present appeal, appear in the following quotations from the opinion: "It is claimed on behalf of the plaintiff that the decree for alimony is not for a sufficient amount and also that she is entitled to dower in the estate of the defendant; while on behalf of the defendant's estate it is alleged that the amount of alimony is excessive, and if, in addition to it, the plaintiff is entitled to dower in the estate, it will be impossible to raise the amount without her signature to the deeds, the property being exclusively real estate ......"

"But it is claimed that notwithstanding the decree of divorce the plaintiff is still entitled under the statute to dower in the real estate of the defendant and this is the principal question in the case ......"

"......, A decree a vinculo matrimonii dissolves the marriage and puts an end to the relation of husband and wife, and as a necessary consequence, to the right of dower upon the decease of the husband ...... The effect of a divorce is to put an end to all rights of property depending upon the marriage and not ac-

tually vested, such as the right of dower in the wife, etc.'' (citing, inter alia, Miltimore v. Miltimore, 40 Pa. 151).

"The most that can be claimed for our statute is, that upon the decree of divorce being rendered for any of the causes above named [desertion was not named] the court may in the nature of alimony award the plaintiff dower in the lands of which her husband was seized at the date of the decree. In such case, however, the right to dower is not contingent upon the death of the husband, but accrues at once upon the rendition of the decree ......'' "The statute, however, to protect the claims of the wife preserves her right of dower in the lands of her husband in case she obtains a decree of divorce a vinculo from him for adultery, misconduct, etc. This right becomes operative at once upon a decree being rendered, and not upon the death of the defendant.''

"We therefore hold that a wife on obtaining a divorce for the causes named, is entitled to dower in the lands of her husband if she so elect, and the same may be set off as a portion of the husband's estate to which she is entitled. But if she do not demand her dower, and the court makes a division of the property of the husband in her favor in the nature of alimony, it will be held to include her dower right unless a contrary intention appears, and the decree will conclude the rights of the parties. As the decree for alimony in this case was for a gross sum payable by installments, and seems to have been a fair division of the property of the husband, it must be held to include the plaintiff's right to dower in his lands.'' The judgment was affirmed.

In Walton v. Walton, 57 Neb. 102, 77 N. W. 392 (1898) the court said: "In the first place the wife's prayer in her petition was for permanent alimony and not that she might be, upon the dissolution of the marriage, awarded a dower interest in her husband's

lands, and she did not complain in the district court, nor does she here, that she was not given a dower interest. She must therefore be deemed to have assented to accept a sum of money equal in value to the dower as permanent alimony and in lieu thereof.''

A consideration of appellant's decree, in the light of the foregoing quotations, requires us to hold that it was not intended by the decree to render defendant's estate liable, or to charge the payment of installments accruing after the divorced husband's death on property he might leave; on the contrary, the provision in the decree specifying that the award is ''in lieu of her dower interest and right in any property he has or may have,'' clearly indicates that the intention was to make the alimony a substitute for a widow's interest in her husband's estate; she was not to have both; it was an award of such support as the husband's marital obligation would require him to pay, and that would of course end with his death. This conclusion accords with the general rule that the obligation to pay alimony ends with a divorced husband's death: Wilson v. Hinman, 182 N. Y. 408; annotated in 2 L. R. A. (N. S.) 232; Rice v. Andrews, 217 N. Y. S. 532; Knapp v. Knapp, 134 Mass. 153; Stone v. Duffy, 219 Mass. 178; Lally v. Lally, 152 Wis. 56; Lenahan v. O'Keefe, 107 Ill. 620; Hazard v. Hazard, 197 Ill. App. 612; Parsons v. Parsons, (Col.) 201 Pac. 559, also reported with annotations in 18 A. L. R. 1038.

The appeal is dismissed at the cost of appellant.