## Faivre, Appellant, *v.* Faivre.

Argued September 24, 1956. Before RHODES, P. J., GUNTHER, WRIGHT, WOODSIDE, ERVIN, and CARR, JJ. (HIRT, J., absent).

*Clyde E. Williamson,* with him *Williamson & Cupp,* for appellant.

No argument was made nor brief submitted for appellee.

OPINION BY RHODES, P. J., December 28, 1956:

This is an appeal by plaintiff, Emile Faivre, from the dismissal of his complaint for annulment of a bigamous marriage.

Although our review of this matter, as in a divorce proceeding, involves the exercise of our independent judgment upon the whole record (*Fitzpatrick v. Miller,* 129 Pa. Superior Ct. 324, 330, 196 A. 83) the only question on this appeal is a legal one. The facts are undisputed, and are set forth in a statement of the case under Rule 41 of this Court. It appears that defendant, then known as Alice Josephine Parker, was married to one Ralph L. Dettling on July 4, 1945, in Williamsport, Lycoming County, Pennsylvania, and that this marriage has subsisted to the time of this proceeding. On February 19, 1955, by virtue of a marriage license obtained upon application in Clinton County, Pennsylvania, the said Alice Josephine Parker purportedly married the plaintiff before a justice of the peace in Trout Run, Lycoming County, Pennsylvania. On April 6, 1955, the Court of Quarter Sessions of Lycoming

County determined that Alice Parker Faivre was mentally ill and of criminal tendency; she was thereupon committed to the Danville State Hospital, Danville, Pennsylvania. On April 26, 1955, plaintiff filed his complaint for annulment of the marriage on the ground of bigamy; and the court appointed a member of the bar to act as guardian ad litem of Alice Parker Faivre in this proceeding. After hearing, the master appointed by the court filed his report in which he recommended that a decree of annulment be entered as prayed for in the complaint. Exceptions which were filed by the guardian ad litem to the master's report were sustained by the court below which held that as a matter of law an annulment could not be obtained as long as the defendant remained insane. This appeal by plaintiff followed. We have the benefit of a brief from appellant, but the guardian, recognizing that the question involved is one of law, has elected to rely on the opinion of the court below.

Appellant's complaint was filed under section 12 of The Divorce Law, Act of May 2, 1929, P. L. 1237, as amended, 23 PS §12, which provides: "In all cases where a supposed or alleged marriage shall have been contracted, which is absolutely void by reason of one of the parties thereto having a spouse living at the time of the supposed or alleged marriage, or, if, for any other lawful reason, the said supposed or alleged marriage was absolutely void when contracted, such supposed or alleged marriage, may, upon the application of either party, be declared null and void, in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony." If the question of defendant's insanity was not involved, appellant obviously would have been entitled to a decree of annulment on the stated facts. The pur-

ported marriage was entered into while defendant's husband, Ralph L. Dettling, was alive and the parties undivorced. *Sharpe v. Federal Window and Office Cleaning Co.*, 144 Pa. Superior Ct. 231, 243, 19 A. 2d 509. The court below concluded, however, that the insanity of defendant precluded any annulment because of an anomaly in The Divorce Law. Section 18 of the Law, 23 PS §18, provides: "In cases where a spouse is a hopeless lunatic, or non compos mentis, the courts of common pleas shall have jurisdiction to receive a petition or libel for divorce in which such lunatic or person non compos mentis is made the respondent, but only for a ground provided for in section ten of this act. The proceedings, except as otherwise expressly provided in this act, shall, in such cases, be the same as in other proceedings for divorce." The court reasoned that—since section 12 provides that annulment proceedings are to be "in accord with the principles and forms hereinafter prescribed for cases of divorce from the bond of matrimony," and since section 18 restricts divorce actions against insane spouses to those grounds enumerated in section 10 of the Law, 23 PS §10—section 12 therefore cannot be made the basis for any annulment proceeding against a spouse who is insane at the time of the action.

We think it is apparent for several reasons that the Legislature did not intend such a result. Although The Divorce Law is a codification, revision, and consolidation of the law relating to divorce from the bonds of matrimony, to divorce from bed and board, and to the annulment of void marriages, 23 PS §1, there are certain substantive features of each which necessarily must remain distinct. The Divorce Law sets forth the grounds for divorce from the bonds of matrimony in section 10, 23 PS §10, for divorce from bed and board

in section 11, 23 PS §11, and for the annulment of void marriages in section 12, 23 PS §12. The remainder of the Law is devoted to jurisdictional, procedural and related matters. In order to obviate the necessity of providing a separate procedure for each of the three substantive provisions or of repeating the name of each in all of the subsequent sections, the Legislature adopted the practical expedient of setting forth a method of procedure for proceedings in divorce from the bonds of matrimony and then applying this procedure to the other two actions by means of reference. For example, we have held that section 46 of the Law, 23 PS §46, providing for the allowance of alimony pendente lite, counsel fees, and expenses to the wife in cases of divorce, applies to annulment proceedings even though they are not mentioned therein. *Stump v. Stump,* 111 Pa. Superior Ct. 541, 543, 544, 170 A. 393. The substantive law relating to divorce from the bonds of matrimony is separate and distinct from that relating to annulment proceedings; naturally the procedure which the Legislature set up for divorce proceedings would not always be entirely applicable when related to annulment proceedings.

An annulment proceeding, as distinguished from a divorce proceeding, is merely declarative of an existing status; it does not create a new relationship or sever a prior one. An annulment proceeding ". . . provides a method by which a judicial record may be obtained, formally declaring void, marriages which by the law are void and recited by the act itself to be void. It is a means furnished by the legislature for rendering facts and their effect judicially certain." *Klaas v. Klaas,* 14 Pa. Superior Ct. 550, 553.

In *Com. ex rel. Knode v. Knode,* 149 Pa. Superior Ct. 563, 567, 27 A. 2d 536, 538, Judge HIRT made this

comprehensive statement: "A decree of annulment in reality does not annul the marriage, for it does not speak only from its date; it merely declares that the marriage was void from the very beginning. It does not create a new status but, on the contrary, affirms that there has been no change in status. A nullity in law is not comparative, to be measured by degrees; it is absolute, implying that the thing has no legal existence. Such decree is no more than a declaratory judgment, judicially determining with certainty and finality that there never was a valid marriage." Moreover, that a marriage is void may be shown in any legal proceeding where it is a pertinent matter. *Newlin's Estate*, 231 Pa. 312, 314, 80 A. 255; *Com. v. Mudgett*, 174 Pa. 211, 253, 254, 34 A. 588; *Maurer v. Maurer*, 163 Pa. Superior Ct. 264, 270, 60 A. 2d 440. See *Melnick v. Melnick*, 147 Pa. Superior Ct. 564, 573, 25 A. 2d 111. It has been held that, as a void marriage is a nullity, the innocent party is free to marry again without any prior decree of annulment. *Com. ex rel. Knode v. Knode*, supra, 149 Pa. Superior Ct. 563, 568, 27 A. 2d 536. Such a procedure, however, is inadvisable for obvious reasons. Cf. *Lannamann v. Lannamann*, 171 Pa. Superior Ct. 147, 89 A. 2d 897.

In addition to making bigamy a ground for annulment section 12 of the Law, as amended by the Act of July 15, 1935, P. L. 1013, §1, 23 PS §12, provides that annulment proceedings may be utilized to declare void a supposed or alleged marriage which for "any other lawful reason" was "absolutely void when contracted." A marriage performed while one of the parties is insane is such a void marriage. *Newlin's Estate*, supra, 231 Pa. 312, 80 A. 255; *Nonnemacher v. Nonnemacher*, 159 Pa. 634, 639, 28 A. 439. See Act of August 24, 1953, P. L. 1344, §5, 48 PS §1-5 (d);

Act of June 28, 1951, P. L. 612, §511, 50 PS §1861. Under the interpretation given to these sections of the Law by the court below, a marriage which was void ab initio by reason of insanity could not be judicially determined to be void in a proceeding under section 12 during the continuance of insanity, although it vitiated the marriage in the first instance. Still the other party to the void marriage could marry again without such declaration or without having the status determined in some other proceeding where the nature of the relationship was pertinent. Such a result is unreasonable and absurd, and it certainly is one which the Legislature did not intend. Statutory Construction Act of May 28, 1937, P. L. 1019, §52 (1), 46 PS §552 (1). When the Legislature amended section 12 by the Act of 1935 to provide for the annulment of marriages void when contracted, including those contracted by insane persons, it did not change or amend section 18. We think this is indicative of its own interpretation of section 18 as having no application to matters arising under section 12.

Assuming that The Divorce Law may be fairly susceptible of two constructions on the matter before us, we must give it an interpretation which will avoid unreasonable consequences and which will further its true object and purpose. *Hooks v. Hooks,* 123 Pa. Superior Ct. 507, 513, 187 A. 245. The purpose of section 12 is to provide an orderly process to declare as nullities those marriages which are properly shown to be void. To apply section 18 thereto would be to suspend this process and encourage persons in such circumstances as the present appellant finds himself to take it upon themselves to assume that the marriage is void and to act accordingly. The nature of an annulment proceeding declaring void that which has no

legal significance, and the purpose of section 12 to provide a proper judicial means for such determination militate against any interpretation of section 18 which would impose restrictions based upon a condition arising subsequent to the transaction which was void from the beginning.

The question naturally arises as to the intent of the Legislature in providing in section 18 that where a spouse is a hopeless lunatic, or non compos mentis, a divorce action may be begun, "but only for a ground provided for in section ten of this act." Section 18 is a substantial re-enactment of the Act of April 18, 1905, P. L. 211, which is the first statute relating to the bringing of a divorce action against a spouse who is a hopeless lunatic or non compos mentis. *Hickey v. Hickey,* 138 Pa. Superior Ct. 271, 275, 11 A. 2d 187. But see *Boyer v. Boyer,* 163 Pa. Superior Ct. 520, 524, 63 A. 2d 495. Although the Act of 1905 was not intended to establish insanity as a new ground for divorce from the bonds of matrimony (*Baughman v. Baughman,* 34 Pa. Superior Ct. 271, 272), there was no specific provision therein restricting divorces in such cases to those based upon grounds previously recognized. Some confusion followed with the result that a few divorces were granted by courts of common pleas solely on the basis of the hopeless insanity of defendant. These erroneous decrees, initially invalid, were validated by Acts of the Legislature in 1909 and 1927.[1] The restrictive provision relating to the grounds for divorce when the spouse is insane first appears in section 18 of The Divorce Law of 1929. When it is construed in the light of its historical development, the mischief to be remedied and the object to be attained

---

[1] Act of May 3, 1909, P. L. 390, §1; Act of May 13, 1927, P. L. 991. §1.

(Statutory Construction Act of May 28, 1937, P. L. 1019, §51, 46 PS §551; *Martin Estate,* 365 Pa. 280, 283, 74 A. 2d 120), the purpose and the function of this section appear to be the clarification of the original intention of the Legislature that insanity itself was not a new ground for divorce from the bonds of matrimony. See *Hickey v. Hickey,* supra, 138 Pa. Superior Ct. 271, 277, 11 A. 2d 187.

The court below in its construction of sections 12 and 18 of the Law cites Freedman, Law of Marriage and Divorce in Pennsylvania, Vol. 2, §505, pp. 1095, 1096, 1097, wherein it is said that the machinery of the law cannot be invoked to annul a void marriage where, at the time of suit, the defendant is insane. Assuming that there may be an unintentional deficiency in the statute, it does not warrant a conclusion that is illogical and unjustified. The presumption is that the Legislature intended to make The Divorce Law capable of execution in the accomplishment of its purposes. To interpret section 18 as prohibiting annulment proceedings when the defendant is insane would require a finding that the Legislature set forth the substantive law of annulment and then gave it no effect for a reason unrelated to the matters which made the marriage a nullity from the very beginning. Obviously the subsequent insanity of a defendant will not validate a previous void marriage; and it should not be permitted to suspend the operation of the law so long as the rights of the insane party are protected. The status of the parties continues to be that of unmarried persons regardless of the subsequent insanity of one of them. We are convinced that the Legislature could not have intended that the relationship remain in a state of confusion merely because the defendant becomes a lunatic. When given the only plausible

construction The Divorce Law is clear, reasonable, and in furtherance of the intention to provide for the judicial annulment of void marriages, bigamous or otherwise.

The order of the court below is reversed, and the record is remanded to the court below for the entry of a decree of annulment declaring void the alleged marriage entered into between plaintiff and defendant.